Entered on Docket November 28, 2016

**Below is a Memorandum Decision of the Court.**



_____
**Paul B. Snyder**
**U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>DIANE SCARBOROUGH,<br><br>　　　　　　　　　Debtors. | **Case No. 16-41370** |
| CHRISTOPHER R. McLEOD, C.R. McLEOD ASSOCIATES, LLC, and SYLVESTER WEAVER, Jr.,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>DIANE SCARBOROUGH,<br><br>　　　　　　　　　Defendant. | **Adversary No. 16-04077**<br><br>**MEMORANDUM DECISION**<br>**(not for publication)** |

This matter came for trial before the Court on October 25, 2016, on the complaint filed by Christopher R. McLeod, C.R. McLeod Associates, LLC, and Sylvester Weaver, Jr. (collectively Plaintiffs) against Diane Scarborough (Debtor), and for hearing on the Motion for Relief from Automatic Stay Under 4001(a) filed in the bankruptcy case by the Plaintiffs. The Plaintiffs alleged numerous causes of action in their complaint and trial brief. At trial, the Plaintiffs acknowledged that they were not pursuing causes of action under 11 U.S.C. § 523(a)(4), (5), (6) or (15)[1], any

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM DECISION - 1

**Below is a Memorandum Decision of the Court.**

action under § 727, or seeking priority status for their debt under § 507.  Thus, the remaining causes of action for trial were fraud under § 523(a)(2)(A), revocation of confirmation, and relief from stay.  The Court took the matter under advisement.  Based on the evidence, arguments of counsel, and pleadings submitted, the Court makes the following findings of fact and conclusions of law.

The basic underlying facts are not disputed.  The Debtor and her former husband were married for eleven years.  In July 2014, he filed a Petition for Dissolution in Pierce County Superior Court (State Court).  Since there were no children, the only issues to be decided by the State Court were the division of property and debts, and possible maintenance.  On December 18, 2015, following a trial, the State Court entered a Decree of Dissolution (Decree) and Findings of Fact and Conclusions of Law.  On that same date, the State Court also entered Findings of Fact, Conclusions of Law, and Order Granting Attorneys Fees and Costs to Be Paid by Respondent, the Debtor.  It is documented throughout the State Court orders and verbatim reports of proceedings that that the Debtor was intransigent during litigation of the dissolution, including being disrespectful to the court, avoiding discovery, violating court orders, running up costs and fees, and thwarting attempts to obtain a meaningful CR 35 examination.  As a result, the State Court ordered the Debtor to pay a share of her former husband's attorney's fees, administrative fees, and a medical examination cost (Judgment).

In Exhibit A to the Decree, the State Court awarded the Debtor a share of two retirement funds belonging to her former husband:  $48,275.86 from the LEOFF II account, and $124,447.50 from the ICMA 457 account.  In the Decree, the State Court also set forth the terms of the Judgment to be paid by the Debtor from her share of the ICMA 457 account to him and his attorney. Specifically, the Decree provides that the principal judgment amount of $27,408.34, shall be paid in full from the Debtor's share of the ICMA 457 account after the Debtor has paid

MEMORANDUM DECISION - 2

**Below is a Memorandum Decision of the Court.**

any applicable taxes or penalties for withdrawal of funds, and before she has personal access to any of these funds.

In addition to the Decree, the verbatim reports of proceedings admitted into evidence establish that it was the State Court's intent that the Debtor pay the Judgment from her share of the retirement funds. These proceedings further indicate that after the State Court ordered the Debtor to pay the Judgment, the Debtor at the hearing on January 8, 2016, represented to the State Court and the opposing party that she would pay the Judgment from her share of the ICMA 457 account. On January 29, 2016, however, at the last state court hearing before the Debtor filed bankruptcy, the Debtor informed the State Court that she would not satisfy the Judgment by taking money from her share of the ICMA 457 account. The State Court ruled that the Debtor had 90 days to satisfy the Judgment from her share of the ICMA funds, continuing the matter to May 6, 2016. In the event the Debtor did not pay, her former husband could move under Washington State Superior Court Civil Rule 60(b)(4) and (11)[2] to vacate a portion of the property division in order for the State Court to redivide the property to provide for the unsatisfied Judgment.

The Debtor did not pay the Judgment, but instead filed a petition for bankruptcy under chapter 13 on March 30, 2016. The State Court thereafter continued the Court Review Hearing from May 6 to November 18, 2016. The Plaintiffs represent that they filed a motion to vacate to be heard on May 6, 2016. Although not set forth in their briefs, Exhibit 1 to ECF No. 46 in the main case, filed in support of their request for relief from stay, shows that the motion to vacate was filed on April 18, 2016, clearly after the Debtor's bankruptcy petition was filed.

On May 9, 2016, the Debtor filed an Amended Plan dated May 9, 2016 (Amended Plan), and on May 18, 2016, Mr. McLeod filed an Objection to Debtor's Plan with Strict Compliance, arguing that the Debtor's Amended Plan was not feasible or filed in good faith. On June 14,

---

[2] Rule 60(b)(4) allows relief from a judgment or order for fraud, and Rule 60(b)(11) for any other reason justifying relief.

MEMORANDUM DECISION - 3

**Below is a Memorandum Decision of the Court.**

2016, the Plaintiffs filed a Motion for Relief from Automatic Stay Under 4001(a) and Continuing Objection to Debtors Plan (Motion for Relief from Stay), arguing again that the Debtor's plan was not filed in good faith and seeking relief from the stay to resume their motion to vacate in state court and permit that court to reapportion the property division. On June 27, 2016, the Plaintiffs filed the current adversary proceeding seeking denial of discharge for common law fraud and under § 523(a)(2)(A), (a)(4), (a)(5) and (a)(6), and injunctive relief to prevent the Debtor from accessing the ICMA 457 account. At the hearing on June 30, 2016, the Court ruled that the Motion for Relief from Stay was premature, thus denying it without prejudice. An order to this effect was entered on July 21, 2016. The Court further ruled after a colloquy with the parties that any issues raised in the confirmation objection requiring an evidentiary hearing, such as bad faith, could be consolidated with the adversary proceeding through a motion to amend. The Court declined to confirm the Amended Plan at that time, continuing the confirmation hearing to July 28, 2016. Confirmation was subsequently continued to August 11, 2016.

On August 8, 2016, Mr. McLeod filed an Objection to Debtor's Amended Plan, arguing that the Amended Plan did not provide for nondischargeable debts, that the Debtor continued to conceal property, and incorporating prior objections. The Debtor filed a response. On August 10, 2016, Mr. McLeod filed a Reply to Response to Objection (Reply), which provides as follows:

> As to the substance of the objection, the court is asked to note that Mr. Weaver and the undersigned do not so much object to this debtor entering into a chapter 13 bankruptcy plan as they do object to having that plan in any way impair their ability to pursue their adversary proceeding and, if successful, have the debts owing to them declared non-dischargeable.

Reply 2, ECF No. 38. Mr. McLeod, however, requested that the Amended Plan not be confirmed to allow time for the Debtor to make full disclosure of her possessions and for the chapter 13 trustee (Trustee) and Court to determine whether the Amended Plan was adequate. Mr. McLeod also indicated that an amendment to the adversary complaint would be presented shortly; the Plaintiffs, however, never moved to amend their complaint.

MEMORANDUM DECISION - 4

**Below is a Memorandum Decision of the Court.**

At the confirmation hearing on August 11, 2016, the Trustee informed the Court that he had determined there was no evidentiary basis for the allegation that the Debtor was hiding assets, and the feasibility issue had been resolved. Thus the Trustee recommended the Amended Plan for confirmation. The Plaintiffs represented to the Court that it was not their primary concern to deny the Debtor access to bankruptcy protection, but rather to reserve the right to have their debts determined to be nondischargeable in the adversary proceeding. Having determined that there was insufficient evidence to deny confirmation, the Court confirmed the Debtor's Amended Plan, reserving for the adversary proceeding the nondischargeability issues.

In their Trial Brief in Support of Dismissal of Nondischargeable Debts and Relief from Stay (Trial Brief) filed in the adversary proceeding, the Plaintiffs raised several issues not alleged in their complaint. At the trial on October 25, 2016, the Plaintiffs reiterated that they did not oppose the Debtor being in bankruptcy. They further acknowledged that they were not pursuing or could not sustain causes of action under § 523(a)(4), (5), (6) or (15), any action under § 727, or obtain priority status. The Court took the remaining causes of action under advisement.

### A. 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To except a debt from discharge under § 523(a)(2)(A), a creditor must prove by a preponderance of the evidence the following elements:

(1) the debtor made . . . representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; [and]

(5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

MEMORANDUM DECISION - 5

Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010) (quoting Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir. 1996)).

The Plaintiffs contend that the Debtor falsely represented that she would pay the Judgment from her awarded portion of the ICMA 457 account, and that her failure to do so damaged them in the amount of the Judgment. Even if these allegations are true, the Plaintiffs have not established fraud under § 523(a)(2)(A). To prevail on this cause of action, the damage must be the result of a debtor's false representations upon which the creditor relied. On December 18, 2015, the State Court ordered the Debtor to pay a monetary sanction from her share of the ICMA 457 account to the Plaintiffs for her intransigence. It was not until January 8, 2016, however, that the Debtor represented to the Plaintiffs and the State Court that she would in fact pay the Judgment from the ICMA 457 account. As such, the sanction was made prior to and independent of any representation by the Debtor that she would satisfy the Judgment from her share of the ICMA 457 account. Not only was there no representation by the Debtor to the Plaintiffs prior to the Judgment, there was no reliance by the Plaintiffs resulting in the Judgment. Moreover, it is unclear from the record whether the Debtor knew she would not pay the Judgment at the time she represented that she would. Accordingly, there simply is no cause and effect in this case that would allow the Court to find fraud under § 523(a)(2)(A).

### B. Bad Faith/Revocation of Confirmation

To confirm a plan, a court must find that the plan has been proposed in good faith and not by any means forbidden by law. § 1325(a)(3). Additionally, a court must find that the action of the debtor in filing the petition was in good faith. § 1325(a)(7) (added under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005). Thus, the issues of whether a debtor filed a petition and plan in good faith are necessarily determined at the time of confirmation. In re Curtis, No. 09-41396, 2010 WL 1444851 at *2 (Bankr. S.D. Ill. April 9, 2010) (citing Torres Martinez v. Arce (In re Torres Martinez), 397 B.R. 158, 165 (1st Cir. BAP 2008)). Plan

confirmation orders are final and binding. Section 1327(a); <u>United Student Aid Funds, Inc. v. Espinosa</u>, 130 S. Ct. 1367, 1376 (2010).

On August 13, 2016, upon the recommendation of the Trustee, the Court entered an Order Confirming Chapter 13 Plan. Based on the pleadings filed and statements made by the Plaintiffs at the confirmation hearing, more particularly described in pages 4-5, any confirmation objections by the Plaintiffs pertaining to bad faith were waived, except to the extent they impacted the Plaintiffs' causes of action for nondischargeability.

The Plaintiffs never amended their adversary complaint to allege bad faith. The Court, however, can construe their bad faith arguments at trial as a request for revocation of confirmation pursuant to § 1330. <u>See</u> <u>In re Schneider</u>, 134 Fed. App'x 181 (9th Cir. 2005) (where the Ninth Circuit Court of Appeals construed a motion to dismiss under § 1307(c) as a request for revocation under § 1330 because revocation and dismissal are related and to prevent circumventing the 180-day filing requirement for request for revocation).

Section 1330 provides a narrow exception to res judicata and finality. This provision allows the court to revoke confirmation of a chapter 13 plan (1) if a request for revocation is made within 180 days of the entry of the confirmation order; and (2) only if the confirmation order was procured by fraud. <u>Duplessis v. Valenti (In re Valenti)</u>, 310 B.R. 138, 145 (9th Cir. BAP 2004). Absent a timely request and fraud, res judicata applies. <u>Valenti</u>, 310 B.R. at 145. To revoke a chapter 13 confirmation order on the basis of fraud, the moving party must establish the normal elements of fraud: (1) the debtor made a representation; (2) the debtor knew the representation was false when it was made; (3) the representation was made with intent to deceive; (4) the creditor relied on the representation; and (5) the creditor was damaged as a result of the representation. <u>In re Matthews</u>, No. 03-00998, 2004 WL 4960377 at *7 (Bankr. D. Idaho April 15, 2004). Consequently, the grounds for objection to confirmation due to bad faith as set forth

MEMORANDUM DECISION - 7

in <u>Leavitt v. Soto (In re Leavitt)</u>, 171 F.3d 1219, 1224 (9th Cir. 1999), do not necessarily apply under § 1330.

While the Plaintiffs have presented evidence regarding the Debtor's bad acts in State Court, there is no evidence that at the time of confirmation, the Debtor engaged in any fraudulent conduct so as to warrant a finding of bad faith in confirming her plan, or even in the more limited revocation of the confirmation order. The Court finds that despite allegations to the contrary, a preponderance of the evidence establishes that the Debtor properly disclosed her assets, including her share in the community property home in accordance with the Decree. The Trustee agreed when he recommended the Amended Plan for confirmation, and the Plaintiffs explicitly waived—in written materials and open court—any objections based on the Debtor's alleged bad faith. The Court also recognizes that while the Debtor filed two prior bankruptcy cases and received discharges in both—in 1989 and 1999—the fact of these prior filings, which were known to all parties at confirmation, do not alone constitute fraud.

Additionally, prior to confirmation, the Court, Trustee, and Plaintiffs were fully aware of the circumstances surrounding the Debtor's filing of this bankruptcy case. The Court finds that the Debtor's trial testimony was anything but credible, and was evasive. Nevertheless, there is no evidence of bad faith in filing the bankruptcy, or fraud in procuring the confirmation order or otherwise as determined in the § 523(a)(2)(A) analysis. Unfortunately, the Debtor's conduct in State Court surrounding the property division and sanction Judgment, while reprehensible, does not rise to the level of fraud or grounds to revoke the Debtor's confirmation order under § 1330.

C. Relief from Stay

The Plaintiffs seek relief from stay to pursue their motion to vacate a portion of the property division so that the State Court can reapportion the property to provide for the unsatisfied Judgment.

MEMORANDUM DECISION - 8

**Below is a Memorandum Decision of the Court.**

Section 362(d)(1) authorizes the court to grant relief from stay for cause. Whether cause exists to lift the stay is a matter of sound discretion and is made on a case-by-case basis. Factors relevant to determine whether the stay should be lifted to permit litigation to continue in another forum include: judicial economy, the degree to which the state court case has progressed and whether the issues involve matters of state law. Carbaugh v. Carbaugh (In re Carbaugh), 278 B.R. 512, 525 (10th Cir. BAP 2002). Cases have long held that "[i]t is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'" In re MacDonald, 755 F.2d 715, 717 (9th Cir. 1985) (quoting Beauchamp v. Graham (In re Graham), 14 B.R. 246, 248 (Bankr. W.D. Ky. 1981)). Thus, courts have granted relief from stay to complete state proceedings for divorce, child custody, and property division. MacDonald, 755 F.2d at 717.

Initially, any argument regarding the entry, or not, of the Qualified Domestic Relations Orders (QDRO) for the ICMA 457 or LEOFF II accounts is irrelevant for purposes of determining whether the retirement accounts were property of the estate when the Debtor filed her bankruptcy. The Debtor's interest in the retirement accounts was established under state law at the time the Decree was entered. See Gendreau v. Gendreau (In re Gendreau), 122 F.3d 815, 818 (9th Cir. 1997). Moreover, a QDRO does not create a property interest; it merely prevents a party from enforcing an interest until that party obtains a QDRO. Gendreau, 1122 F.3d at 818-19. As such, the Debtor obtained a property interest in her shares of the ICM 457 and LEOFF II accounts when the Decree was entered on December 18, 2015, and these became estate property when she filed bankruptcy.

As to whether the property division was pending when she filed chapter 13, it is significant that at the time the Debtor filed bankruptcy, the State Court already had divided the parties' property and finalized this division through the Decree. While the State Court ruled that it would

MEMORANDUM DECISION - 9

consider a motion to vacate a portion of the property division, the fact remains that the property division was completed by the State Court on December 18, 2015. Accordingly, there was no pending proceeding as to the property division when this bankruptcy case was filed.

Nor was there a pending proceeding as to the motion to vacate. The Court recognizes that the sanctions awarded to the Plaintiffs on December 18, 2015, were in the form of a monetary judgment and not part of the property division. It is apparent that the State Court believed it could incorporate sanctions into the property division, but it did not do so in the Decree. Rather, it appears this was to be the subject of a further motion to vacate.

The Court also recognizes that under state law cited by the Plaintiffs, In re Marriage of Angelo, 142 Wn. App. 622 (2008), the Plaintiffs had grounds to seek the reapportionment of the property division due to allegations of fraud in the dissolution proceeding. Nonetheless, the Plaintiffs did not file their motion to vacate in state court until *after* the Debtor filed her bankruptcy petition, which fact was not disclosed to the Court. This is significant because § 362(b)(2)(iv) explicitly stays any proceeding seeking "to determine the division of property that is property of the estate." As indicated above, the Debtor acquired a property interest in the retirement accounts when the Decree was entered on December 18, 2015, and her shares of the accounts became estate property upon her bankruptcy filing on March 30, 2016. Thus, when the Plaintiffs filed their motion to vacate on April 19, 2016, the Debtor's shares of the ICMA 457 and LEOFF II accounts were already property of the estate, and filing the motion to vacate postpetition violated the automatic stay. Moreover, the timing of the motion negates the Plaintiffs' argument that the Debtor filed her bankruptcy petition to thwart the Plaintiffs' efforts to pursue their pending motion to vacate. While the Plaintiffs may have had a valid argument in State Court prior to the filing of the bankruptcy petition, the Court cannot condone the Plaintiffs' violation of the automatic stay or their failure to provide relevant facts to the Court, by granting them relief from stay. Nor

is there authority for this Court unravel the State Court's property division that was finalized prior to the Debtor's bankruptcy filing.

The Court is not particularly pleased with the result reached in this case, in large part because of the Debtor's lack of credibility and her conduct in State Court.  Nonetheless, the Court is compelled to follow the law.  Accordingly, the Plaintiffs have not established cause to lift the stay.

///End of Memorandum Decision///